Michael A. Alfred, Esq.   SBN 113706
Law Office of Michael A. Alfred
7220 Trade Street, Suite 103
San Diego, California 92121
(858) 566-6800

Attorney for Plaintiffs

**FILED**

AUG 2 5 2009

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

CRAIG A. CHAN, JOHN ANDERSON, ALAN
ANDERSON, RUSSELL ANDREWS, BETTY
ANDREWS, GARY L. BECKNER, PIETERKE H.
BECKNER, LEO R. BOESE, BARBARA A. BOESE,
LYNN BROWN, ALVERNIST HOSKINS, GIL T.
BUENAVENTURA, LIEM BUI, XUAN THIEU PHONG,
FIONA CHIN, ROBERT DUNHAM, KENNETH F.
ELKERN, JR., BONNIE FEINGOLD, JORGE GARCIA,
AMY GLASS, BECKY GLASS, MARY HAWVER,
CHRISTINE KNOWLTON, EUGENE HARNETT, JEAN
HERNANDEZ, MICHAEL HIPP, SUSAN HIPP,
DANIEL HOGAN, DIANE HOGAN, AUSIM KHAN,
BLESSING S. KRUG, DARIN E. KRUG, ROBERT C.
KUHL, JOSEPH LEE, DAVID MCCREREY, JOYCE
MCCREREY, PHUONG NGUYEN, ALEXANDER
ORAEVSKY, CERINE PAUL, MONICA BECICA,
HANNA PHAM, MICHAELEON HUYNH, RYAN
RAUCH, MICHAEL TRAINOR, DAVID TRUONG,
EZEKIEL TSADO, NIRMA USHER, AUBREY
VENABLE, CHRISTOPHER ALLRED, JOHN ALLRED,
MARY ALLRED, JAMES WOLOSIN, KIMBALL
WONG, VIVIEN WONG,

          Plaintiffs,

vs.

MARC COREY CHANCELOR, MARLON D.
CHANCELOR, JAMES W. CHANCELOR,
CHRISTOPHER CHANCELOR, JOSEPH A. TASSI,
CHASE HOME FINANCE LLC, JPMORGAN CHASE
BANK, WASHINGTON MUTUAL BANK, AMERICA'S
SERVICING COMPANY, SUNTRUST BANKS, INC.,
AURORA LOAN SERVICES, INC., BANK OF
AMERICA CORPORATION, COUNTRYWIDE HOME
LOANS, INC., COUNTRYWIDE HOME LOANS
SERVICING, L.P., N/K/A BAC HOME LOANS
SERVICING, LP, HOMEQ SERVICING
CORPORATION, WELLS FARGO HOME

Case No. **'09 CV 1 8 3 9   H**     **NLS**

**COMPLAINT FOR INJUNCTION, RESTITUTION,
OTHER EQUITABLE RELIEF, AND CIVIL
PENALTIES**

**DEMAND FOR JURY TRIAL**

Judge:
Dept.:
Action Filed:
Trial Date: Not Set



MORTGAGE, INC., CITIMORTGAGE, INC., UBS AG,   )
DEUTSCHE BANK NATIONAL TRUST COMPANY,   )
AS TRUSTEE ON BEHALF OF BCAP LLC 2007-AA2,   )
LASALLE BANK NA AS TRUSTEE FOR WAMU   )
MORTGAGE PASS-THROUGH CERTIFICATES   )
SERIES 2007-OA6 TRUST, BANK OF AMERICA,   )
NATIONAL ASSOCIATION, AS SUCCESSOR-BY-   )
MERGER TO LASALLE BANK, NA, AS TRUSTEE   )
FOR WAMU MORTGAGE PASS-THROUGH   )
CERTIFICATES, SERIES 2007-0A5 TRUST, BANK OF )
AMERICA HOME LOANS SERVICING, L.P., A   )
SUBSIDIARY OF BANK OF AMERICA, N.A., REAL   )
TIME RESOLUTIONS, INC., MORTGAGE   )
ELECTRONIC REGISTRATION SYSTEMS, INC. AS   )
NOMINEE FOR COUNTRYWIDE HOME LOANS INC., )
PREMIER REALTY ADVISORS OF FLORIDA, LLC,   )
JEWYLL S. DUNCAN-DUMORNAY, GRAND   )
RESERVE, LLC, GRAND RESERVE KIRKMAN   )
ORLANDO, LLC, WALDENPACIFIC EXIT   )
STRATEGIES, LLC, BELMONT AT RYALS CHASE   )
TAMPA, LLC, WALDENPACIFIC PROPERTY TRUST, )
WALDEN PACIFIC HOLDINGS, LLC, MADISON AT   )
METROWEST ORLANDO, LLC, EQUILEASE   )
RESIDENTIAL SERVICES, LLC, WALDENPACIFIC   )
ASSET MANAGEMENT, WALDENPACIFIC ASSET   )
MANAGEMENT, LLC, WALDENPACIFIC   )
CORPORATE LEASING GRAND RESERVE, LLC,   )
WALDENPACIFIC CORPORATE LEASING MADISON )
OAKS, LLC, WALDENPACIFIC CORPORATE   )
LEASING MADISON, LLC, WALDENPACIFIC   )
FINANCIAL SERVICES, LLC, HOLLYWOOD   )
PENTHOUSE OFFICE L.L.C., NORTHWEST MUTUAL )
CREDIT CORPORATION, ABBEY BERKOWITZ,   )
ABBA REAL ESTATE DEVELOPMENT GROUP, LLC  )
DBA ABBA GROUP, ROBERT W. FORLOINE,   )
MICHAEL PUDERBEUTEL, DRAGON PROPERTY   )
INVESTMENTS, INC. DBA BEACH HILL   )
DEVELOPMENT, LLC, THE CLOSING CONNECTION )
TITLE AND ESCROW, INC., THE CLOSING   )
SPECIALISTS, INC., THE GRAND RESERVE AT   )
KIRKMAN PARKE CONDOMINIUM ASSOCIATION,   )
INC., THE BELMONT AT RYALS CHASE   )
CONDOMINIUM ASSOCIATION, INC., THE   )
MADISON AT METROWEST CONDOMINIUM   )
ASSOCIATIONS, INC. and DOES 1 through 200   )
                                                                      )

_____
                    Defendants.
_____

## PRELIMINARY STATEMENT

1.      Plaintiffs are individual consumers who were purchasing vacation properties in

various developments being sold in the South Florida area.  Defendants MARC COREY

CHANCELOR, MARLON D. CHANCELOR, JAMES W. CHANCELOR, CHRISTOPHER

CHANCELOR, PREMIER REALTY ADVISORS OF FLORIDA, LLC, and JOSEPH A. TASSI

**(hereinafter collectively referred to as "SUPER BROKERS")** in conjunction with Defendants

CHASE HOME FINANCE LLC, JPMORGAN CHASE BANK, WASHINGTON MUTUAL

BANK, AMERICA'S SERVICING COMPANY, SUNTRUST BANKS, INC., AURORA

LOAN SERVICES, INC., BANK OF AMERICA CORPORATION, COUNTRYWIDE HOME

LOANS, INC., COUNTRYWIDE HOME LOANS SERVICING, L.P.. N/K/A BAC HOME

LOANS SERVICING, LP., HOMEQ SERVICING CORPORATION, WELLS FARGO HOME

MORTGAGE, INC., CITIMORTGAGE, INC., UBS AG, DEUTSCHE  BANK NATIONAL

TRUST COMPANY, AS TRUSTEE ON BEHALF OF BCAP LLC 2007-AA2, LaSALLE

BANK NA AS TRUSTEE FOR WAMU MORTGAGE PASS-THROUGH CERTIFICATES

SERIES 2007-OA6  TRUST, BANK OF AMERICA, NATIONAL ASSOCIATION, AS

SUCCESSOR-BY-MERGER TO LaSALLE BANK, NA, AS TRUSTEE FOR WAMU

MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-0A5 TRUST, BANK OF

AMERICA HOME LOANS SERVICING, L.P., A SUBSIDIARY OF BANK OF AMERICA,

N.A., REAL TIME RESOLUTIONS, INC., MORTGAGE ELECTRONIC REGISTRATION

SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE HOME LOANS INC., **(hereinafter**

**collectively referred to as "BANKS"),**  and JEWYLL S. DUNCAN-DUMORNAY

**(hereinafter referred to as "BROKERS")** GRAND RESERVE, LLC, GRAND RESERVE

KIRKMAN ORLANDO, LLC, WALDENPACIFIC EXIT STRATEGIES, LLC, BELMONT

AT RYALS CHASE TAMPA, LLC, WALDENPACIFIC PROPERTY TRUST, WALDEN

PACIFIC HOLDINGS, LLC, MADISON AT METROWEST ORLANDO, LLC, EQUILEASE

RESIDENTIAL SERVICES, LLC, WALDENPACIFIC ASSET MANAGEMENT,

WALDENPACIFIC ASSESSMENT MANAGEMENT, LLC, WALDENPACIFIC

CORPORATE LEASING GRAND RESERVE, LLC, WALDENPACIFIC CORPORATE LEASING MADISON OAKS, LLC, WALDENPACIFIC CORPORATE LEASING MADISON, LLC, WALDENPACIFIC FINANCIAL SERVICES, LLC, HOLLYWOOD PENTHOUSE OFFICE L.L.C. , NORTHWEST MUTUAL CREDIT CORPORATION, **(hereinafter collectively referred to as "CHANCELOR Entities")**, ABBEY BERKOWITZ, ABBA REAL ESTATE DEVELOPMENT GROUP, LLC DBA ABBA GROUP, ROBERT W. FORLOINE, MICHAEL PUDERBEUTEL, DRAGON PROPERTY INVESTMENTS, INC. DBA BEACH HILL DEVELOPMENT, LLC **(hereinafter collectively referred to as "DEVELOPERS")**, THE CLOSING CONNECTION TITLE AND ESCROW, INC., THE CLOSING SPECIALISTS, INC. **(hereinafter collectively referred to as "ESCROW AGENTS")**, THE GRAND RESERVE AT KIRKMAN PARKE CONDOMINIUM ASSOCIATION, INC., THE BELMONT AT RYALS CHASE CONDOMINIUM ASSOCIATION, INC. and THE MADISON AT METROWEST CONDOMINIUM ASSOCIATION, INC. **(hereinafter collectively referred to as "HOAs"),** caused Plaintiffs to enter into predatory mortgage loans, which ultimately had no reasonable, tangible economic benefit for the Plaintiffs and have left them facing foreclosure.

2.      Plaintiffs bring this action seeking an order for rescission of the predatory loans in which they are trapped, equitable relief, monetary damages, as well as statutory and actual damages under the Truth in Lending Act (hereinafter "TILA"), *15 U.S.C. §1601 et seq.*, and under Federal Reserve Board Regulation Z, *12 C. F. R. §226*, promulgated pursuant to TILA, and under Real Estate Settlement Practices Act, *12 U.S.C. §2607* and Regulation X §3500.14(b).

## JURISDICTION AND VENUE

3.      Jurisdiction is conferred upon this Court pursuant to *28 U.S.C. §1331* in that the

claims alleged herein arise under the laws of the United States. This Court has supplemental

jurisdiction pursuant to *28 U.S.C. §1367* to hear and determine Plaintiffs' state law claims

because those claims are related to Plaintiffs' federal claims and arise out of a common nucleus

of related facts and form part of the same case or controversy under Article III of the United

States Constitution.

4.     The Court has jurisdiction over Plaintiffs' action for declaratory relief pursuant to

*28 U.S.C. §2201* and *Rule 57 of the Federal Rules of Civil Procedure*. Injunctive relief is

authorized by *28 U.S.C. §2202* and *Rule 65 of the Federal Rules of Civil Procedure*.

5.     Venue is proper in the Southern District of California Pursuant to *28 U.S.C.*

*§1391(b) (2)* in that a substantial part of the events, or omissions giving rise to the claims

occurred herein and a number of the Defendants reside or may be found here.

## PARTIES

6.     The Plaintiffs CRAIG A. CHAN, JOHN ANDERSON, ALAN ANDERSON,

RUSSELL ANDREWS, BETTY ANDREWS, GARY L. BECKNER, PIETERKE H.

BECKNER,  LEO R. BOESE, BARBARA A. BOESE, LYNN BROWN, ALVERNIST

HOSKINS, GIL T. BUENAVENTURA, LIEM BUI, XUAN THIEU PHONG, FIONA CHIN,

ROBERT DUNHAM, KENNETH F. ELKERN, JR., BONNIE FEINGOLD, JORGE GARCIA,

AMY GLASS, BECKY GLASS, MARY HAWVER, CHRISTINE KNOWLTON, EUGENE

HARNETT, JEAN HERNANDEZ, MICHAEL HIPP, SUSAN HIPP, DANIEL HOGAN,

DIANE HOGAN, AUSIM KHAN, BLESSING S. KRUG, DARIN E. KRUG, ROBERT C.

KUHL, JOSEPH LEE, DAVID MCCREREY, JOYCE MCCREREY, PHUONG NGUYEN,

ALEXANDER ORAEVSKY, CERINE PAUL, MONICA BECICA, HANNA PHAM,

MICHAELEON HUYNH, RYAN RAUCH, MICHAEL TRAINER, DAVID TRUONG,

EZEKIEL TSADO, NIRMA USHER, AUBREY VENABLE, CHRISTOPHER ALLRED, JOHN ALLRED, MARY ALLRED, JAMES WOLOSIN, KIMBALL WONG and VIVIEN WONG, are natural persons who reside in Florida, Texas, Illinois, Missouri, Maryland, Tennessee, Mississippi, Arkansas and California.

7.    Plaintiffs are informed and believe and thereon allege that Defendant MARC COREY CHANCELOR is a natural person who resides in the State of Florida.  However, from January, 2006 through May, 2007 MARC COREY CHANCELOR resided in the State of California and is believed to maintain business offices in California and in other states (*See* office locations listed on the attached Summary Of Northwest Mutual Financial Trust attached hereto as Exhibit "A" and incorporated herein).

8.    Plaintiffs are informed and believe and thereon allege that Defendant MARLON D. CHANCELOR is a natural person who resides in the State of Florida and is believed to maintain a business office in California and in other states.

9.    Plaintiffs are informed and believe and thereon allege that Defendant CHRISTOPHER CHANCELOR is a natural person who resides in the State of Florida and is believed to maintain a business office in California and in other states.

10.    Plaintiffs are informed and believe and thereon allege that Defendant JAMES W. CHANCELOR is a natural person who resides in the State of Florida and is believed to maintain a business office in California and in other states.

11.    Plaintiffs are informed and believe and thereon allege that Defendant JOSEPH A. TASSI is a natural person who resides in the State of Illinois and is believed to maintain a business office in California and in other states.

12.     Plaintiffs are informed and believe and thereon allege that Defendant CHASE

HOME FINANCE LLC is an LLC which at all times relevant was qualified to do and was doing

business in the State of California and in other states.

13.     Plaintiffs are informed and believe and thereon allege that Defendant

JPMORGAN CHASE BANK is a corporation which at all times relevant was qualified to do and

was doing business in the State of California and in other states.

14.     Plaintiffs are informed and believe and thereon allege that Defendant

WASHINGTON MUTUAL BANK is a corporation which at all times relevant was qualified to

do and was doing business in the State of California and in other states.

15.     Plaintiffs are informed and believe and thereon allege that Defendant

AMERICA'S SERVICING COMPANY is a corporation which at all times relevant was

qualified to do and was doing business in the State of California and in other states.

16.     Plaintiffs are informed and believe and thereon allege that Defendant

SUNTRUST BANKS, INC. is a corporation which at all times relevant was qualified to do and

was doing business in the State of California and in other states.

17.     Plaintiffs are informed and believe and thereon allege that Defendant AURORA

LOAN SERVICES, INC. is a corporation which at all times relevant was qualified to do and was

doing business in the State of California and in other states.

18.     Plaintiffs are informed and believe and thereon allege that Defendant BANK OF

AMERICA CORPORATION is a corporation which at all times relevant was qualified to do and

was doing business in the State of California and in other states.

19.     Plaintiffs are informed and believe and thereon allege that Defendant COUNTRYWIDE HOME LOANS, INC. is a corporation which at all times relevant was qualified to do and was doing business in the State of California and in other states.

20.     Plaintiffs are informed and believe and thereon allege that Defendant COUNTRYWIDE HOME LOANS SERVICING, L.P. N/K/A BAC HOME LOANS SERVICING, L.P. is a corporation which at all times relevant was qualified to do and was doing business in the State of California and in other states.

21.     Plaintiffs are informed and believe and thereon allege that Defendant HOMEQ SERVICING CORPORATION is a corporation which at all times relevant was qualified to do and was doing business in the State of California and in other states.

22.     Plaintiffs are informed and believe and thereon allege that Defendant WELLS FARGO HOME MORTGAGE, INC. is a corporation which at all times relevant was qualified to do and was doing business in the State of California and in other states.

23.     Plaintiffs are informed and believe and thereon allege that Defendant CITIMORTGAGE, INC. is a corporation which at all times relevant was qualified to do and was doing business in the State of California and in other states.

24.     Plaintiffs are informed and believe and thereon allege that Defendant UBS AG is a corporation which at all times relevant was qualified to do and was doing business in the State of California and in other states.

25.     Plaintiffs are informed and believe and thereon allege that Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE ON BEHALF OF BCAP LLC 2007-AA2 is a corporation which at all times relevant was qualified to do and was doing business in the State of California and in other states.

26.     Plaintiffs are informed and believe and thereon allege that Defendant LaSALLE BANK NA AS TRUSTEE FOR WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA6 TRUST is a corporation which at all times relevant was qualified to do and was doing business in the State of California and in other states.

27.     Plaintiffs are informed and believe and thereon allege that Defendant BANK OF AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR-BY-MERGER TO LaSALLE BANK, NA, AS TRUSTEE FOR WAMU MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-0A5 TRUST is a corporation which at all times relevant was qualified to do and was doing business in the State of California and in other states.

28.     Plaintiffs are informed and believe and thereon allege that Defendant BANK OF AMERICA HOME LOANS SERVICING, LP, a subsidiary of BANK OF AMERICA, N.A. is a corporation which at all times relevant was qualified to do and was doing business in the State of California and in other states.

29.     Plaintiffs are informed and believe and thereon allege that Defendant REAL TIME RESOLUTIONS, INC is a corporation which at all times relevant was qualified to do and was doing business in the State of California and in other states.

30.     Plaintiffs are informed and believe and thereon allege that Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE HOME LOANS INC. is a corporation which at all times relevant was qualified to do and was doing business in the State of California and in other states.

31.     Plaintiffs are informed and believe and thereon allege that Defendant PREMIER REALTY ADVISORS OF FLORIDA, LLC is a business entity which at all times relevant was qualified to do and was doing business in the State of Florida.

32.     Plaintiffs are informed and believe and thereon allege that Defendant JEWYLL S. DUNCAN DUMORNAY is a natural person who resides in the State of Florida.

33.     Plaintiffs are informed and believe and thereon allege that Defendant GRAND RESERVE, LLC is an entity which at all times relevant was doing business in the States of California and Florida; however, at the present time is **not qualified** and **operating illegally** in the State of Florida.  It would appear that this entity has filed for a voluntary dissolution in the State of Florida.

34.     Plaintiffs are informed and believe and thereon allege that Defendant GRAND RESERVE KIRKMAN ORLANDO, LLC is an entity which at all times relevant was qualified to do and was doing business in the State of Florida; however, at the present time is **not qualified** and **operating illegally** in the State of Florida.  It would appear that this entity was revoked for failing to file its annual report.

35.     Plaintiffs are informed and believe and thereon allege that Defendant WALDENPACIFIC EXIT STRATEGIES, LLC is an entity which at all times relevant was a qualified to do and was doing business in the State of Delaware and qualified to do and was doing business in the State of Florida and in the State of California.

36.     Plaintiffs are informed and believe and thereon allege that Defendant BELMONT AT RYALS CHASE TAMPA, LLC is an entity which at all times relevant was qualified to do and was doing business in the State of Delaware and was doing business in the State of Florida.

37.     Plaintiffs are informed and believe and thereon allege that Defendant WALDENPACIFIC PROPERTY TRUST is an entity which at all times relevant was qualified to do and was doing business in the State of Delaware and is doing business in the State of Florida and in the State of California.

38.     Plaintiffs are informed and believe and thereon allege that Defendant WALDENPACIFIC PLATINUM, LLC is an entity which at all times relevant was qualified to do and was doing business in the State of Delaware and the State of Florida.  However, at the present time is **not qualified and operating illegally** in the State of Florida. It would appear that this entity was revoked for failing to file its annual report.

39.     Plaintiffs are informed and believe and thereon allege that Defendant WALDENPACIFIC HOLDINGS, LLC is an entity which at all times relevant was doing business in the State of Florida and in the State of California.

40.     Plaintiffs are informed and believe and thereon allege that Defendant MADISON AT METROWEST ORLANDO, LLC is an entity which at all times relevant was qualified to do and was doing business in the State of Florida. However, at the present time is **not qualified and operating illegally** in the State of Florida.  It would appear that this entity was revoked for failing to file its annual report.

41.     Plaintiffs are informed and believe and thereon allege that Defendant EQUILEASE RESIDENTIAL SERVICES, LLC is an entity which at all times relevant was qualified and was doing business in the States of Delaware, Florida and California. However, at the present time is **not qualified and operating illegally** in the State of Florida. It would appear that this entity was revoked for failing to file its annual report.

42.     Plaintiffs are informed and believe and thereon allege that Defendant WALDENPACIFIC ASSET MANAGEMENT is an entity which at all times relevant was qualified to do and was doing business in the States of Florida and was and is doing business in California.

43.     Plaintiffs are informed and believe and thereon allege that Defendant WALDENPACIFIC ASSET MANAGEMENT, LLC is an entity which at all times relevant was qualified to do and was doing business in the States of Delaware and Florida and is doing business in California. However, at the present time is **not qualified and operating illegally** in the State of Florida. It would appear that this entity was revoked for failing to file its annual report.

44.     Plaintiffs are informed and believe and thereon allege that Defendant WALDENPACIFIC CORPORATE LEASING GRAND RESERVE, LLC is an entity which at all times relevant was qualified to do and was doing business in the State of Delaware, but was doing business in the States of Florida and California.

45.     Plaintiffs are informed and believe and thereon allege that Defendant WALDENPACIFIC CORPORATE LEASING MADISON OAKS, LLC is an entity which at all times relevant was qualified to do and was doing business in the States of Delaware, California and Florida.  However, at the present time is **not qualified and operating illegally** in the State of Florida.  It would appear that this entity was revoked for failing to file its annual report.

46.     Plaintiffs are informed and believe and thereon allege that Defendant WALDENPACIFIC CORPORATE LEASING MADISON, LLC is an entity which at all times relevant was qualified and to and was doing business in the States of Delaware, California and Florida.  However, at the present time is **not qualified and operating illegally** in the State of Florida.  It would appear that this entity was revoked for failing to file its annual report.

47.     Plaintiffs are informed and believe and thereon allege that Defendant WALDENPACIFIC FINANCIAL SERVICES, LLC is an entity which at all times relevant was qualified to do business and was doing business in the States of Delaware, and at present is doing

business in the States of Florida and California.  However, at the present time is **not qualified and operating illegally** in the State of Florida.  It would appear that this entity was revoked for failing to file its annual report.

48.     Plaintiffs are informed and believe and thereon allege that Defendant HOLLYWOOD PENTHOUSE OFFICE L.L.C. is an entity which at all times relevant was qualified to do and was doing business in the State of Florida.

49.     Plaintiffs are informed and believe and thereon allege that Defendant NORTHWEST MUTUAL CREDIT CORPORATION is an entity which at all times relevant was qualified to do and was doing business in The State of Florida and is presently doing business in California and in other states.

50.     Plaintiffs are informed and believe and thereon allege that Defendant ABBEY BERKOWITZ is a natural person which resides in the State of Florida.

51.     Plaintiffs are informed and believe and thereon allege that Defendant ABBA REAL ESTATE DEVELOPMENT, LLC dba ABBA GROUP is an entity which at all times relevant was qualified to do and was doing business in the State of Florida.

52.     Plaintiffs are informed and believe and thereon allege that Defendant ROBERT W. FORLOINE is a natural person who resides in the State of Florida.

53.     Plaintiffs are informed and believe and thereon allege that Defendant MICHAEL PUDERBEUTEL is a natural person who resides in the State of Florida.

54.     Plaintiffs are informed and believe and thereon allege that Defendant DRAGON PROPERTY INVESTMENTS, INC. dba BEACH HILL DEVELOPMENT, LLC is an entity which at all times relevant was qualified to do and was doing business in the State of Florida.

55.     Plaintiffs are informed and believe and thereon allege that Defendant THE CLOSING CONNECTION TITLE AND ESCROW, INC. is a business entity which at all times relevant was qualified to do and was doing business in the State of Florida and has availed itself of doing business in California and other states via interstate commerce.

56.     Plaintiffs are informed and believe and thereon allege that Defendant THE CLOSING SPECIALISTS, INC. is a business entity which at all times relevant was qualified to do and was doing business in the State of Florida and has availed itself of doing business in California and other states via interstate commerce.

57.     Plaintiffs are informed and believe and thereon allege that Defendant THE GRAND RESERVE AT KIRKMAN PARKE CONDOMINIUM ASSOCIATION, INC. is an entity which at all times relevant was qualified to do and was doing business in the State of Florida and has availed itself of doing business in California and other states via interstate commerce.

58.     Plaintiffs are informed and believe and thereon allege that Defendant THE BELMONT AT RYALS CHASE CONDOMINIUM ASSOCIATION, INC. is an entity which at all times relevant was qualified to do and was doing business in the State of Florida and has availed itself of doing business in California and other states via interstate commerce.

59.     Plaintiffs are informed and believe and thereon allege that Defendant THE MADISON AT METROWEST CONDOMINIUM ASSOCIATION, INC. is an entity which at all times relevant was qualified to do and was doing business in the State of Florida and has availed itself of doing business in California and other states via interstate commerce.

60.     The true names and capacities, whether individual, corporate, associate or otherwise, of the Defendants designated fictitiously herein are unknown to Plaintiffs at this time

who, therefore, sues said Defendants by fictitious names and will seek leave of this court to amend this complaint to show their true names and capacities, when the same have been ascertained, together with such additional allegations which may be necessary in this regard. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged herein, and that the damages as herein alleged were proximately caused by their conduct.

61.     Plaintiffs are informed and believe and thereon allege that each Defendant and DOES 1 through 200, inclusive, were at all times relevant herein residents of the State of California and/or corporations, partnerships, associations or individuals duly qualified to do business in or doing business in the State of California.

62.     Plaintiffs are informed and believe and thereon allege that each Defendant, and DOES 1 through 200, inclusive, were acting as the agents, servants and/or employees of each of the other Defendants and were acting within the course and scope of said agency and employment, with the consent, express and implied, of the other Defendants, and that the acts and omissions herein alleged were ratified by each of them.

## FACTUAL ALLEGATIONS

63.     Commencing on or about January or February of 2006, MARC COREY CHANCELOR (hereinafter referred to as "COREY") formed a number of legal entities which included entities formed to manage people and monies related to CHANCELOR Entities. COREY worked on other projects such as The Landing, The Preserve at Temple Terrace, Windsor at Sabal Walk, South Bay Plantation, Club Caribbe, Arbors at Branch Creek and other developments that will be identified at a later time. COREY formed entities to limit his liability

in each of the developments such as the CHANCELOR Entities. There are more entities that will be identified and named as party Defendants at the time that their true identities are known.

64.     SUPER BROKERS, DEVELOPERS and CHANCELOR ENTITIES through their employees and associates developed a marketing scheme to sell properties in various multi-unit developments by working with asset managers, bank officers, lenders and buyers (*See* Non-Exclusive Marketing Agreement attached hereto and incorporated herein as Exhibit "B"). COREY learned the real estate business from his father, JAMES W. CHANCELOR, who assisted, aided and abetted COREY and MARLON D. CHANCELOR in building an aggressive selling organization. JAMES W. CHANCELOR serves as the Chief Administrator/President of Asset Management for WaldenPacific and has a wealth of knowledge and expertise in real estate. JAMES W. CHANCELOR has pled guilty to certain allegations in OSWP Case No. 2005-0118-MDB for Count 1: Grand Theft Second Degree, Count 2: Organized Fraud and Count 3: Real Estate Broker, Act As Without a License. As a result, JAMES W. CHANCELOR was prohibited from involving himself in the real estate business without complying with various stipulations. Plaintiffs are informed and believe and thereon allege that Defendant JAMES W. CHANCELOR's involvement elevated the fiduciary duty of SUPER BROKERS, DEVELOPERS and CHANCELOR ENTITIES to inform and advise each potential client of JAMES W. CHANCELOR's involvement in OSWP Case No. 2005-0118-MDB and informing each client of the stipulations and how they were complied with.

65.     SUPER BROKERS, DEVELOPERS and CHANCELOR Entities devised a number of strategies to form power selling networks with other brokers and to negotiate bulk purchase agreements with DEVELOPERS. (See Exhibit "B" attached hereto.) The key to the success of their selling scheme was to attract buyers by offering lucrative incentive packages

which were often paid in the form of cash rebates back to the buyers at the close or after the close of escrow.  All too often, the lines were blurred as the profit motive superseded the fiduciary duties owed to the Plaintiffs.

66.     SUPER BROKERS, DEVELOPERS and the CHANCELOR Entities hired various brokerage firms within and outside the State of California and other states to make sales presentations in furtherance of his sales and promotional scheme to find potential consumers for his various projects in the State of Florida.  During a long period while he sold properties in projects in Florida, COREY resided and worked out of his residence at 346 S. Hauser Boulevard, Penthouse 401, Los Angeles, California 90036 and is believed to still maintain a business office in California.

67.     In or about March 2006, COREY hired Tracy Stewart to handle his accounting. Tracy Stewart operated the accounting from her office located in Sunland, California.  Based upon information and belief, Ms. Stewart mailed various statements and documents in furtherance of the CHANCELOR Entities from that address both within and outside of the State of California and other states.

68.     Commencing in March of 2006, SUPER BROKERS, DEVELOPERS, CHANCELOR ENTITIES, ESCROW AGENTS, COREY and BROKERS, through the employment of federal interstate wires and/or federal mails traversing Arkansas, Florida, New York, New Jersey, Pennsylvania, Massachusetts, Maryland, South Carolina, Texas, Illinois, Missouri, Virginia, Kentucky, Tennessee, Colorado and California and other states, acting by and through COREY,  Defendants unilaterally and actively solicited Plaintiffs and similarly situated victims, to contribute monies to Defendants for their participation in the various CHANCELOR Entities.

69.     Plaintiffs are informed and believe that the various DEVELOPERS hired the CHANCELOR Entities and others to market and promote the sale of condominium units in the Grand Reserve, Arbors, Belmont and Madison projects (hereinafter referred to as the "Projects") to potential consumers in California and other states.   Plaintiffs are informed and believe that SUPER BROKERS, DEVELOPERS, CHANCELOR ENTITIES, COREY and BROKERS were paid millions of dollars in commissions directly through THE CLOSING CONNECTION TITLE AND ESCROW, INC.  (hereinafter referred to as "CLOSING CONNECTION") and THE CLOSING SPECIALISTS, INC. (hereinafter referred to as "CLOSING SPECIALIST") and directly from the DEVELOPERS.  Based upon information and belief, COREY directed that all transactions must be processed by CLOSING CONNECTION and CLOSING SPECIALISTS thereby making CLOSING CONNECTION and CLOSING SPECIALISTS affiliated companies as defined by RESPA.

70.     Plaintiffs are informed and believe that BANKS hired, affiliated with or associated with SUPER BROKERS, DEVELOPERS, CHANCELOR ENTITIES, ESCROW AGENTS, COREY and BROKERS to promote the use of their residential loan products to Plaintiffs and others.   Moreover, these BANKS reviewed and preapproved the plan of lending proposed by SUPER BROKERS, DEVELOPERS and CHANCELOR Entities. Plaintiffs are informed and believe that SUPER BROKERS, DEVELOPERS and CHANCELOR Entities were paid commissions, either directly by or through the CHANCELOR Entities, by or through DEVELOPERS and/or by or through BANKS for marketing and promoting condominium units and their corresponding loans to Plaintiffs and others similarly situated in California and other states. (*See* sample Settlement Statements, true and correct copies of which are attached hereto as Exhibit "C" and incorporated by reference herein.)  Each of these BANKS also received funds

from Plaintiffs as fees for processing their loans.  (*See Ibid.*) Plaintiffs are informed and believe

that Defendant ESCROW AGENTS had arrangements with COREY whereby SUPER

BROKERS, DEVELOPERS and CHANCELOR Entities were compensated for referring

Plaintiffs to ESCROW AGENTS for use of their services.  ESCROW AGENTS received wire

transfers from Plaintiffs and charged Plaintiffs fees for handling their transactions.  Plaintiffs are

informed and believe that ESCROW AGENTS were aware of SUPER BROKER,

DEVELOPERS and CHANCELOR Entities' fraudulent intent regarding the Plaintiffs.

71.     From April 2006 through July 2007, Plaintiffs invested in the various projects.

Each of the Plaintiffs paid SUPER BROKERS, DEVELOPERS and CHANCELOR Entities an

earnest money deposit.  At SUPER BROKERS, DEVELOPERS and CHANCELOR Entities'

instructions, each Plaintiff filled out purchase agreements and loan application documents.  The

loan applications indicated that the loans would be taken out for "investment" purposes.

Plaintiffs bought the properties with the intent to rent them out. However, they also <u>intended to</u>

<u>use them as vacation residences for more than fourteen days during the year</u>.  Plaintiffs relied on

SUPER BROKERS and CHANCELOR Entities to secure tenants during the time they would not

be using the properties. Each Plaintiff was coached on how to complete the purchase agreements

and loan application documents but was not properly or adequately advised as to the legal

ramifications surrounding the completion of these documents as directed or coached by SUPER

BROKERS and CHANCELOR Entities.

72.     The loan applications were directed to only the few limited preapproved BANKS.

SUPER BROKERS and CHANCELOR Entities instructed the Plaintiffs that they must apply for

loans only through the specified approved BANKS in order to qualify for various lucrative

incentives. (*See* BANKS' letters confirming their participation in the mortgage lending projects

described and advertised by SUPER BROKERS and CHANCELOR ENTITIES, true and correct copies of which are attached hereto as Exhibit "D" and incorporated by reference herein.)

73.     SUPER BROKERS and CHANCELOR Entities advertised under the name of WALDEN PACIFIC PROPERTY TRUST™ under the program description "ABSOLUTELY EFFORTLESS OWNERSHIP™". There is a complete brochure which describes in detail the various incentives available to prospective buyers. (*See* Exhibit "E' attached hereto.)

74.     SUPER BROKERS and CHANCELOR Entities had devised a relatively sophisticated scheme that essentially convinced the Plaintiffs that they would be receiving up to $55,000 in upfront cash back, payment of annual property taxes, payment of homeowner association (hereinafter "HOA") dues, assured rental income, property management services and a one year home warranty.  SUPER BROKERS and CHANCELOR Entities were able to convince their prospective clients that they would be receiving upfront cash along with the peace of mind of knowing that nothing would go wrong during the initial years of owning one of the advertised condominium units within the projects.

75.     SUPER BROKERS and CHANCELOR Entities neglected to advise their clients that they would be paying a premium price on the purchase of each property.  In order to receive the cash back incentive, the prices were non-negotiable.  The loans were going to be non-negotiable as well.  The BANKS were preselected and the deal was preapproved by the BANKS. The interest rates were artificially inflated in order to pay huge commissions to the inside brokers/sales persons who worked for or were connected with SUPER BROKERS, DEVELOPERS and CHANCELOR Entities.

76.     Plaintiffs executed their copies of the purchase agreements and loan applications and sent them, via federal interstate wires and/or through federal mails, to be processed by

SUPER BROKERS, DEVELOPERS and CHANCELOR Entities but some Plaintiffs never received a complete set of fully executed copies as required by RESPA.  Plaintiffs are informed and believe that SUPER BROKERS, DEVELOPERS and CHANCELOR Entities never intended to provide Plaintiffs with full disclosure even though SUPER BROKERS, DEVELOPERS and CHANCELOR Entities had a fiduciary relationship with each of the Plaintiffs.

77.     From April 2006 through July of 2007, SUPER BROKERS, DEVELOPERS and CHANCELOR Entities informed various Plaintiffs that their Purchase Agreements and loan applications required corrections and instructed said Plaintiffs to make the various corrections to the applications. SUPER BROKERS, DEVELOPERS and CHANCELOR Entities informed various Plaintiffs that their purchase agreements and loan applications had been misplaced and/or required corrections and requested that they resubmit duplicate or corrected documents.  SUPER BROKERS, DEVELOPERS and CHANCELOR Entities took earnest money deposits from Plaintiffs and failed to deposit the funds into a trust account.  The money has never been returned, nor has it been accounted for.

78.     From April 2006 through the present, SUPER BROKERS, DEVELOPERS and CHANCELOR Entities collected rents from tenants pursuant to agreements with Plaintiffs but failed to apply those rents properly in accordance with the terms of those agreements.  SUPER BROKERS, DEVELOPERS and CHANCELOR Entities have converted funds that were due to be paid to the Plaintiffs.  Despite numerous requests made by Plaintiffs, SUPER BROKERS, DEVELOPERS and CHANCELOR Entities have failed to properly account for all such funds that are being held in constructive trust for the benefit of Plaintiffs.  Plaintiffs are informed and believe that these trust funds have been transferred amongst the Defendants in an effort to conceal the funds and to avoid repayment to the Plaintiffs.

79.     From April 2006 through July of 2007, SUPER BROKERS, DEVELOPERS, CHANCELOR ENTITIES and ESCROW AGENTS paid illegal commissions and kickbacks to various employees, brokers, agents, sales persons, etc. in connection with the sales of condominium units within the projects in violation of RESPA.

80.     From April 2006 through July of 2009, SUPER BROKERS, DEVELOPERS and CHANCELOR Entities failed to pay property taxes on behalf of the Plaintiffs as advertised in their various incentive brochures.

81.     From April 2006 through July of 2009, SUPER BROKERS, DEVELOPERS and CHANCELOR Entities failed to pay HOA dues up to $8,500 on Plaintiffs' behalf as advertised in their incentive brochure.  Moreover, SUPER BROKERS, DEVELOPERS and CHANCELOR Entities placed themselves in a conflict of interest position of making payments on behalf of their clients while holding membership on the various HOA Boards.  Later, SUPER BROKERS, DEVELOPERS and CHANCELOR Entities failed to make such HOA payments as promised, and then commenced dunning/collection actions against those same clients for failure to pay the very same HOA fees.

82.     From April 2006 through July of 2009, SUPER BROKERS, DEVELOPERS and CHANCELOR Entities provided 1099 forms to the Plaintiffs for the cash back incentives paid in accordance with the advertising brochure.  SUPER BROKERS, DEVELOPERS and CHANCELOR Entities failed to provide full disclosure that the cash back incentives would be a taxable event to the Plaintiffs.  Moreover, SUPER BROKERS, DEVELOPERS and CHANCELOR Entities failed to inform Plaintiffs that they had already taken this money in the form of a loan that they would pay interest on.  Hence, the Plaintiffs were going to have to pay taxes on money that they had borrowed.  In essence, they were paying interest and income taxes

on the same money, which was never properly disclosed and clearly not in Plaintiffs' best interest.  We believe that these actions constitute a clear breach of SUPER BROKERS, DEVELOPERS and CHANCELOR Entities' fiduciary duty to their clients.  All Defendants benefited from this approach as they received higher commissions from the higher loan balances and higher prices on the sales of condominium units.  SUPER BROKERS, DEVELOPERS and CHANCELOR Entities benefited by issuing 1099s to the Plaintiffs and, thereby concealing from the IRS some of the commissions they had earned.

83.    From April 2006 through July of 2009, SUPER BROKERS, DEVELOPERS and CHANCELOR Entities acknowledged that they were delinquent in making the promised incentive payments by sending letters to the Plaintiffs.  (A true and correct copy of a letter to a Plaintiff is attached hereto as Exhibit "F" and incorporated by reference herein.)  SUPER BROKERS, DEVELOPERS and CHANCELOR Entities maintained business records which detailed the amounts due to the Plaintiffs.  (A true and correct copy of a letter to a Plaintiff is attached hereto as Exhibit "G" and incorporated by reference herein.)

84.    From April 2006 through July of 2009, SUPER BROKERS, DEVELOPERS and CHANCELOR Entities advertised that Letters of Credit were established with Bank of America and/or Wachovia Bank for the protection and benefit of the Plaintiffs.  (*See* Exhibit "H" attached hereto)  SUPER BROKERS, DEVELOPERS and CHANCELOR Entities assured the Plaintiffs that should there be a default upon any of the promises made in the advertising brochures, a claim could be made against the Letters of Credit. The Letters of Credit would ensure the performance of the incentive promises made to Plaintiffs and would mitigate against any risk that Plaintiffs would be exposed to from purchasing the condominium units.  We believe that SUPER BROKERS and CHANCELOR Entities never intended to provide a Letter of Credit and this was

merely a fraudulent assertion made to sell more condominium units.  Even if SUPER

BROKERS, DEVELOPERS and CHANCELOR Entities had purchased a Letter of Credit, there

has never been a proffer to perform by placing a claim for the benefit of Plaintiffs to ensure that

Plaintiff's losses were paid by the Letters of Credit.

85.     BANKS aided and abetted SUPER BROKERS, DEVELOPERS and

CHANCELOR ENTITIES in executing and carrying out their fraudulent scheme.  One of the

key disclosures made to Plaintiffs is contained within the advertising brochure.  "NOTE:  ALL

OF THE ABOVE INCENTIVES WILL BE FULLY DISCLOSED TO THE BUYER'S

LENDER AND ARE SUBJECT TO THE BUYER'S LENDER WRITTEN APPROVAL."

Plaintiffs were informed that the BANKS were fully aware of the entire program and were in full

agreement with SUPER BROKERS, DEVELOPERS AND CHANCELOR ENTITIES.

## FIRST CAUSE OF ACTION

### Against BANKS

### VIOLATION OF TRUTH IN LENDING ACT, *15 U.S.C. §1601 et seq.*

86.     Plaintiffs repeat and reallege the paragraphs 1 through 85 as though fully set forth

herein.

87.     At the time of the subject loan transactions, BANKS acted as creditors who

regularly engaged in the making of mortgage loans, payable by agreement in more than four

installments or of which the payment of a finance charge is or may be required, whether in

connection with loans, sales of property or services, or otherwise.  Accordingly, Defendant

BANKS are subject to the Truth in Lending Act ("TILA"), *15 U.S.C. §1601 et seq.*, and its

implementing regulation, Federal Reserve Board Regulation Z, *12 C. F. R. §226.*

88.     At the time of the subject loan transactions, Plaintiffs bought the properties with

the intent to rent them out. However, they also intended to use them as vacation residences for more than fourteen days during the year. The properties are owner-occupied rental properties. Therefore, they do not fit in the business credit exemption in Federal Reserve Board Regulation Z, *12 C. F. R. §226*.3(a) and TILA does apply in the subject transactions.

89.     As a result the subject transactions, BANKS acquired an interest in Plaintiffs' properties to secure payment or performance of an obligation.

90.     In the course of the various consumer credit transactions described above, Defendant BANKS violated the disclosure requirements of TILA and Regulation Z in the following aspects:

a.     By failing to disclose properly and accurately the amount financed, in violation of *15 U.S.C. §1638(a) (2)* and *12 C.F.R. §226.18(b)*,

b.     By failing to disclose properly and accurately the finance charge fees payable to third parties that were not bona fide or reasonable in amount, as required by *15 U.S.C. §1638(a) (3)* and 12 C.F.R. *§§226.18(d) & 226.4*,

c.     By failing to disclose properly and accurately the "annual percentage rate" in violation of *15 U.S.C. §1638(a) (4)* and *12 C.F.R. §226.18(e)*,

d.     By failing to disclose properly and accurately the "total of payments" in violation of *15 U.S.C. §1638(a) (5)* and *12 C.F.R. §226.18(h)*,

e.     By failing to disclose properly and accurately the number, amount, and due dates or period of payments scheduled to repay the obligation in violation of *15 U.S.C. § 1638(a) (6)* and *12 C.F.R. §226.18(g)*,

91.     The failure to comply with any provision of *15 U.S.C. §1639* is deemed a failure to deliver material disclosures for the purpose of *15 U.S.C. §1635. See 15 U.S.C. §1639(j)*.

92.     Therefore, as provided by *15 U.S.C. §1640(a)* Defendant BANKS are liable to Plaintiffs for:

        a.     Actual damages in an amount to be determined at trial;

        b.     Statutory damages as provided; and

        c.     Costs and disbursements.

## SECOND CAUSE OF ACTION

### Against BANKS AND ESCROW AGENTS

### VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT, *12 U.S.C. §2607* AND REGULATION X §3500.14(b)

93.     Plaintiffs repeat and reallege the paragraphs 1 through 92 as though fully set forth herein.

94.     Defendants BANKS and ESCROW AGENTS violated Real Estate Settlement Procedures Act (hereinafter referred to as "RESPA") with respect to Plaintiffs' loan transactions by:

        a.     Giving or accepting kickbacks or other things of value to Defendant BANKS and ESCROW AGENTS and others in violation of *12 U.S.C. §2607(a)* and *24 C.F.R. §3500.14(c)*; and

        b.     Giving a portion, split, or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of *12 U.S.C. §2607(a)* and *24 C.F.R. §3500.14(c)*; and

        c.     Charging Plaintiffs excessive, unearned, and duplicative fees in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of *12 U.S.C. §2607(a)* and *24 C.F.R. §3500.14(c)*;

d.      Not providing an Affiliated Business Disclosure for THE CLOSING CONNECTION in violation of *12 U.S.C §2607(c) (4)*; and

e.      Not providing an Affiliated Business Disclosure for THE CLOSING SPECIALISTS in violation of *12 U.S.C §2607(c) (4)*.

95.      Therefore, as provided by *12 U.S.C. §2607(d) (2)* Defendants BANKS and ESCROW AGENTS are liable to Plaintiffs for:

a.      Actual damages in an amount to be determined at trial;

b.      Statutory damages as provided; and

c.      Costs and disbursements.

### THIRD CAUSE OF ACTION

### Against BANKS

### VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT, *12 U.S.C. §2605(e)* AND REGULATION X §3500.21(d)

96.      Plaintiffs repeat and reallege the paragraphs 1 through 95 as though fully set forth herein.

97.      Defendant BANKS are servicers of federally related mortgage loans within the meaning of the RESPA, *12 U.S.C. §2605*.

98.      Each of the Plaintiffs, through their attorney, sent Defendant BANKS a "qualified written request for information" as that term is defined under RESPA, *12 U. S. C. §2605(e)(1)(B)*, regarding their mortgage accounts.

99.      Said Defendant BANKS violated RESPA, *12 U.S.C. §2605(e) (1) (A)*, by failing to provide a written response acknowledging receipt of the Plaintiffs' qualified written request no later than 20 business days after receipt of the request.

100.     Said Defendant BANKS violated RESPA, *12 U.S.C. §2605(e)(2)(C)* by failing to resolve the issues with Plaintiffs' loans no later than 60 business days after receipt of the Plaintiffs' qualified written request.

101.     Said Defendant BANKS violated RESPA, *12 U.S.C. §2605(e) (2)* by refusing to cease its collection efforts and foreclosure proceedings after receiving the Plaintiffs' qualified written requests.

102.     BANKS violated RESPA, *12 U.S.C. §2605(e)(3)*, by providing information to consumer reporting agencies regarding overdue payments allegedly owed by the Plaintiffs that were related to their qualified written request.

103.     Therefore, as provided by *12 U.S.C. §2605(f)* Defendant BANKS are liable to Plaintiffs for:

    a.     Actual damages in an amount to be determined at trial;

    b.     Statutory damages as provided; and

    c.     Attorney fees.

## FOURTH CAUSE OF ACTION

### Against BANKS

### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

104.     Plaintiffs repeat and reallege the paragraphs 1 through 103 as though fully set forth herein.

105.     Defendant BANKS violated the Fair Debt Collection Practices Act, (hereinafter "FDCPA") *15 U.S.C. §1692 (f)*, by using unfair and unconscionable means to collect the debt owed by the Plaintiffs, including collecting and attempting to collect interest and other charges,

fees and expenses not authorized by the original loan and modification agreement, or otherwise legally chargeable to the Plaintiffs, as more fully set forth above.

106.   Said BANKS violated the FDCPA, *15 U.S.C. §1692(e) (2)*, by misrepresenting the character, amount and legal status of the Plaintiffs' debt.

107.   Said BANKS violated the FDCPA, *15 U.S.C. §§1692(e) (5) and 1692(f) (6)*, by threatening to foreclose on the Plaintiffs' homes even though Defendant BANKS had no present right to possession of the property under its security agreement, and by threatening to take other action prohibited by law.

108.   Said BANKS violated the FDCPA, *15 U.S.C. §1692(g) (a) (1)*, by failing to accurately and fully state in communications to Plaintiffs "the amount of the debt."

109.   Therefore, as provided by *15 U.S.C. §1692(k)* due to the repeated and continuing violations of FDCPA, Defendant BANKS is liable to Plaintiffs for:

      a.    Actual damages in an amount to be determined at trial; and

      b.    Statutory damages as provided.

## FIFTH CAUSE OF ACTION

**Against SUPER BROKERS, DEVELOPERS, CHANCELOR ENTITIES, COREY and BROKERS**

### COMMON LAW FRAUD

110.   Plaintiffs repeat and reallege the paragraphs 1 through 109 as though fully set forth herein

111.   Defendants SUPER BROKERS, DEVELOPERS, CHANCELOR ENTITIES, COREY and BROKERS knowingly and intentionally made fraudulent representations and misrepresentations and omissions of material fact.

112.   It was the foregoing Defendants' objective to sell the condominium projects by whatever means necessary and they knew that the Plaintiffs would not buy property within the condominium projects if true facts were known. Thus, the foregoing Defendants made the misrepresentations and omissions of facts with the intent to deceive and defraud Plaintiffs for the purpose of inducing them to rely upon the fraudulent representations and to enter into purchase agreements within the subject condominium projects and the corresponding mortgage loan transactions.

113.   Plaintiffs did not know that the representations of the foregoing Defendants were false, were unaware of the concealed and suppressed intent and facts because they failed to provide them with sufficient information to make an independent determination of the facts, and actively prevented them from discovering the true and concealed facts.

114.   The misrepresentations were material in nature, as they concerned the basic terms, incentives and benefits of the condominium projects and the resulting mortgage loans.

115.   Plaintiffs acted in reliance on the truth of the representations by executing the contracts, completing the loan applications, signing the promissory notes, paying the earnest money deposits, and by thereafter making payments, all to their detriment.

116.   Plaintiffs' reliance was justified because SUPER BROKERS, DEVELOPERS, CHANCELOR ENTITIES, COREY and BROKERS claimed to be licensed real estate brokers, mortgage loan brokers and/or employees, agents, licensees, representatives, or designees for licensed real estate and/or mortgage loan brokers.  Plaintiffs had no reason to disbelieve or distrust them.

117.   These Defendants' actions were willing, intentional and knowing, rendering the loan transactions null and void.

118.    Because of these Defendants' fraud by intentional misrepresentation and concealment, Plaintiffs should be entitled to rescind the deeds of trust and notes.

119.    As a direct and proximate result of the foregoing Defendants' fraud, Plaintiffs have sustained, and continue to suffer serious injury as the proximate result of their reliance on Defendants' intentional misrepresentations and failures to disclose.

120.    Therefore, Plaintiffs are asking the court to enter an order:

a.    Voiding the purchase agreements and the resulting mortgage liens procured by the common fraud of these Defendants;

b.    Actual and punitive damages in an amount to be determined at trial;

c.    Recoverable costs and attorney's fees; and

d.    Such other relief as is equitable and just.

### SIXTH CAUSE OF ACTION

### Against ALL DEFENDANTS

### CIVIL CONSPIRACY TO COMMIT FRAUD

121.    Plaintiffs repeat and reallege paragraphs 1 through 120 as though fully set forth herein.

122.    Defendants entered into an agreement to induce Plaintiffs to enter the subject purchase agreements and the resulting mortgage transactions by making misrepresentations and/or failing to provide material information.

123.    Defendants intentionally participated in the scheme by inducing Plaintiffs to enter into subject purchase agreements and the resulting mortgage transactions by making misrepresentations and/or failing to provide material information, in furtherance of the agreement.

124.    Plaintiffs suffered serious injury as the proximate result of their reliance on Defendants' actions and representations.

125.    Said conspiracy renders void and unenforceable subject purchase agreements and the resulting mortgage transactions.

126.    Therefore, Defendants are liable to Plaintiffs for:

      a.    Actual and punitive damages in an amount to be determined at trial; and

      b.    Recoverable costs and attorney's fees.

## SEVENTH CAUSE OF ACTION

**Against SUPER BROKERS, DEVELOPERS, CHANCELOR ENTITIES, COREY, ESCROW AGENTS, HOAS AND BROKERS**

### BREACH OF FIDUCIARY DUTIES

127.    Plaintiffs repeat and reallege the paragraphs 1 through 126 as though fully set forth herein.

128.    Defendants SUPER BROKERS, DEVELOPERS, CHANCELOR ENTITIES, COREY, ESCROW AGENTS, HOAS and BROKERS are individuals and entities that regularly engaged in and were knowledgeable of the interrelated businesses of real estate investment, mortgage lending, and mortgage foreclosure.

129.    Defendants are real estate brokers or mortgage brokers and/or agents, affiliates, employees, contractors or agents of real estate or mortgage brokers and as such they were acting as fiduciaries of the Plaintiffs in this action.

130.    In light of the active solicitation of Plaintiffs' business, and the trust and confidence placed in Defendants to help Plaintiffs purchase condominium units within the projects and the resulting mortgage loans, these Defendants owed Plaintiffs a fiduciary duty.

131.   Defendants owed Plaintiffs a fiduciary duty of utmost loyalty, good faith and diligence and breached those duties by, inter alia:

a.   Defendants' failed to disclose the actual amount of commission fees to remunerate these Defendants and others,

b.   Defendants' failed to disclose that the deal was established as an elaborate subterfuge designed and intended to obtain contributed funds and transmit those funds to unknown accounts to avoid recovery of the funds by Plaintiffs.

c.   Defendants' failed to disclose that the Plaintiffs would be provided 1099 forms to Plaintiffs for cash back incentives paid in accordance with the advertising brochure.

d.   Defendants failed to inform Plaintiffs that the incentive funds would be paid in the form of an "illegal kick-back" of the funds that they would be borrowing from the BANKS which must be fully disclosed on the HUD 1 statements.

e.   Defendants failed to inform Plaintiffs that they were going to have to pay interest on the incentive money that Plaintiffs would be paid.

f.   Defendants failed to inform Plaintiffs of their true relationship with DEVELOPERS and of their real conflict of interest on behalf of the DEVELOPERS and SUPER BROKERS while at the same time having a fiduciary relationship with Plaintiffs.

g.   Defendants failed to inform Plaintiffs of the involvement of JAMES W. CHANCELOR and his corresponding convictions for real estate fraud in prior real estate transactions while these Defendants were acting as fiduciaries for the Plaintiffs.

h.   Defendants failed to inform Plaintiffs of their real conflict of interest by holding positions on the respective condominium HOA boards of directors while these Defendants were supposed to be making HOA payments on behalf of the Plaintiffs.  Moreover,

these Defendants had to vote to take hostile collection actions against the Plaintiffs at the same time that they were acting as fiduciaries for the Plaintiffs.

        i.     Defendants failed to inform Plaintiffs of the non-existence of Letters of Credit which were advertised to be in existence in the advertising brochures (See brochure pages 3 and 6 attached hereto as Exhibit "F". Moreover, if such Letters of Credit existed, these Defendants failed to file claims on behalf of the Plaintiffs to protect the interest of the Plaintiffs as required by a fiduciary.

        j.     Defendants took earnest money deposits from Plaintiffs and failed to deposit the funds into a trust account. The money has never been returned, nor has it been accounted for.

        k.     Each Plaintiff was coached on how to complete the purchase agreements and loan application documents but was not properly or adequately advised as to the legal ramifications surrounding the completion of these documents as directed or coached by SUPER BROKERS, DEVELOPERS and CHANCELOR Entities.

132.    All of the Defendants benefited from these breaches of fiduciary duty to the detriment of the Plaintiffs. Defendants engaged in the conduct alleged herein for the purpose of advancing their own financial interest and in callous disregard of the foreseeable financial consequences to Plaintiffs.

133.    By virtue of their deceptive acts and practices, misrepresentations, misstatements and omissions of fact as set forth above, Defendants breached their fiduciary duty to Plaintiffs.

134.    As a direct and proximate cause of Defendants' actions, Plaintiffs have suffered substantial damages to be proven at trial but not yet ascertained.

135.    Therefore, Plaintiffs are asking the court to enter an order:

a.    Voiding the purchase agreements and the resulting mortgage liens procured, aided and abetted by the breaches of fiduciary duties by these Defendants;

b.    Actual and punitive damages in an amount to be determined at trial;

c.    Recoverable costs and attorney's fees; and

d.    Such other relief as is equitable and just.

## EIGHTH CAUSE OF ACTION

### Against BANKS, ESCROW AGENTS and DEVELOPERS

### AIDING AND ABETTING THE BREACH OF FIDUCIARY DUTIES

136.    Plaintiffs repeat and reallege the paragraphs 1 through 135 as though fully set forth herein.

137.    Defendants SUPER BROKERS, DEVELOPERS, CHANCELOR ENTITIES, COREY, ESCROW AGENTS and BROKERS did not engage in the above described wrongful acts and practices alone. Instead they acted as part of a common scheme and conspiracy with the other companies they own, operate and/or control and other un-named co-conspirators which include, but are not limited to Defendant BANKS, ESCROW AGENTS and DEVELOPERS.

138.    BANKS, ESCROW AGENTS and DEVELOPERS aided and abetted SUPER BROKERS, DEVELOPERS, CHANCELOR ENTITIES, COREY, ESCROW AGENTS and BROKERS in executing and carrying out their fraudulent scheme. One of the key disclosures made to Plaintiffs is contained within the advertising brochure. "NOTE: ALL OF THE ABOVE INCENTIVES WILL BE FULLY DISCLOSED TO THE BUYER'S LENDER AND ARE SUBJECT TO THE BUYER'S LENDER WRITTEN APPROVAL." Plaintiffs were informed that the BANKS were fully aware of the entire program and were in full agreement with SUPER

BROKERS AND CHANCELOR ENTITIES and COREY.  Moreover, each lender provided a written advance approval letter to confirm their endorsement of the marketing scheme.  *See* Exhibit "D" attached hereto.

139.   Indeed, for the fraudulent scheme described above to be successful, Defendant BANKS, ESCROW AGENTS and DEVELOPERS had to agree to enact and utilize the same devices and fraudulent tactics against Plaintiffs and others.

140.   Moreover, these Defendants, with knowledge and intent, agreed to approve the entire scheme and to facilitate the procurement of and to underwrite all BANKS loans originated by SUPER BROKERS, DEVELOPERS, CHANCELOR ENTITIES, COREY and their representatives. These Defendants also agreed to, and actually committed, the above alleged acts of fraud and unlawful conduct with the goal of depriving Plaintiffs and others of their money and property in connection with the sale of unsuitable real estate mortgage loans.

141.   Therefore, Plaintiffs are asking the court to enter an order:

    a.   Voiding the mortgage liens executed in favor of Defendant BANKS;

    b.   Actual and punitive damages in an amount to be determined at trial;

    c.   Recoverable costs and attorney's fees; and

    d.   Such other relief as is equitable and just.

## NINTH CAUSE OF ACTION

### Against SUPER BROKERS, ESCROW AGENTS, DEVELOPERS, CHANCELOR ENTITIES AND COREY

### CONSTRUCTIVE FRAUD

142.   Plaintiffs repeat and reallege the paragraphs 1 through 141 as though fully set forth herein.

143.   SUPER BROKERS, ESCROW AGENTS, DEVELOPERS, CHANCELOR

ENTITIES and COREY claim to be mortgage brokers or employees/agents or designees for mortgage brokers and as such they act as fiduciaries on behalf of their clients.

144.    In light of their active solicitation of Plaintiffs' business, and the trust and confidence placed in Defendants to help Plaintiffs purchase condominiums in the projects and procure the resulting mortgage loans, Defendants owed Plaintiffs a fiduciary duty.

145.    Defendants owed Plaintiffs a fiduciary duty of utmost loyalty, good faith and diligence and breached those duties by, inter alia:

a.    Defendants' failed to disclose the actual amount of commission fees to remunerate these Defendants and others,

b.    Defendants' failed to disclose that the deal was established as an elaborate subterfuge designed and intended to obtain contributed funds and transmit those funds to unknown accounts to avoid recovery of the funds by Plaintiffs.

c.    Defendants' failed to disclose that the Plaintiffs would be provided 1099 forms to Plaintiffs for cash back incentives paid in accordance with the advertising brochure.

d.    Defendants failed to inform Plaintiffs that the incentive funds would be paid in the form of an "illegal kick-back" of the funds that they would be borrowing from the BANKS which must be fully disclosed on the HUD 1 statements.

e.    Defendants failed to inform Plaintiffs that they were going to have to pay interest on the incentive money that Plaintiffs would be paid.

f.    Defendants failed to inform Plaintiffs of their true relationship with DEVELOPERS and of their real conflict of interest on behalf of the DEVELOPERS and SUPER BROKERS while at the same time having a fiduciary relationship with Plaintiffs

g.      Defendants failed to inform Plaintiffs of the involvement of JAMES W. CHANCELOR and his corresponding convictions for real estate fraud in prior real estate transactions while these Defendants were acting as fiduciaries for the Plaintiffs.

h.      Defendants failed to inform Plaintiffs of their real conflict of interest by holding positions on the respective condominium homeowner association boards of directors while these Defendants were supposed to be making HOA payments on behalf of the Plaintiffs. Moreover, these Defendants had to vote to take hostile collection actions against the Plaintiffs at the same time that they were acting as fiduciaries for the Plaintiffs.

i.      Defendants failed to inform Plaintiffs of the non-existence of Letters of Credit which were advertised to be in existence in the advertising brochures.  Moreover, if such Letters of Credit existed, these Defendants failed to file claims on behalf of the Plaintiffs to protect the interest of the Plaintiffs as required by a fiduciary.

j.      Defendants took earnest money deposits from Plaintiffs and failed to deposit the funds into a trust account.  The money has never been returned, nor has it been accounted for.

k.      Each Plaintiff was coached on how to complete the purchase agreements and loan application documents but was not properly or adequately advised as to the legal ramifications surrounding the completion of these documents as directed or coached by SUPER BROKERS, DEVELOPERS and CHANCELOR Entities.

146.    Defendants engaged in the conduct alleged herein for the purpose of advancing their own financial interest in callous disregard of the foreseeable financial consequences to Plaintiffs.

147.    Defendants promised Plaintiffs that they would be receiving up to $55,000 in

upfront cash back, payment of annual property taxes, payment of HOA dues, assured rental income, property management services and a one year home warranty.  The aforementioned promised incentive monies were not paid as agreed.

148.    Defendants neglected to advise their clients of JAMES W. CHANCELOR's involvement in these real estate transactions.  Defendants neglected to advise their clients that they would be paying a premium price on the purchase of each property.  In order to receive the cash back incentive, the prices were non-negotiable.  The loans were non-negotiable as well.  The BANKS were preselected by Defendants.  The interest rates were predetermined and inflated in order to pay huge commissions to the inside brokers/sales persons who worked for or were connected with Defendants.

149.    By virtue of their deceptive acts and practices, misrepresentations, and misstatements and omissions of fact as set forth above, Defendants breached their fiduciary duty to Plaintiffs even though their conduct might not necessarily be legally fraudulent.

150.    As a direct and proximate cause of Defendants' actions, Plaintiffs have suffered substantial damages to be proven at trial but not yet ascertained.

151.    Therefore, Plaintiffs are asking the court to enter an order

    a.    Actual and punitive damages in an amount to be determined at trial;

    b.    Recoverable costs and attorney's fees; and

    c.    Such other relief as is equitable and just.

## TENTH CAUSE OF ACTION

### Against SUPER BROKERS, DEVELOPERS, CHANCELOR ENTITIES AND COREY

### CONVERSION

152.    Plaintiffs repeat and reallege the paragraphs 1 through 151 as though fully set

forth herein.

153.    From April 2006 through July of 2009, SUPER BROKERS, DEVELOPERS, CHANCELOR ENTITIES and COREY collected rents from tenants per agreement with Plaintiffs but failed to apply those rents properly in accordance with the terms of the agreement. Defendants converted funds that were due to the Plaintiffs.  Defendants transferred funds amongst themselves in order to conceal these funds from Plaintiffs. Despite numerous requests made by Plaintiffs, SUPER BROKERS, DEVELOPERS, CHANCELOR ENTITIES and COREY failed to properly account for all such funds that they hold in trust for the benefit of Plaintiffs.

154.    The acts by Defendants as herein alleged were willful, deliberate, malicious, and intended to oppress and defraud Plaintiffs.  The Plaintiffs are informed and believe that these trust funds have been transferred amongst these Defendants in an effort to avoid paying these funds back to Plaintiffs.

155.    THEREFORE, Defendants are liable to Plaintiffs for:

    a.    Actual, compensatory, and punitive damages; and

    b.    Costs and disbursements.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor and against each and every Defendant as follows:

1.    For federal declaratory relief pursuant to the Declaratory Judgment Act of 1946 [*Title 28 U.S.C. §§2201-2202*];

2.    Declare that the security interests in subject properties be void;

3.    Declare the Plaintiffs not liable for any finance charges or any other charges imposed by Defendants;

4.    Order the return to Plaintiffs of all money and property given by them to each and every Defendant;

5.    Order Defendant BANKS to take all actions necessary to terminate any security interest created under the subject transactions and declare any such security interest void;

6.    Enjoin all Defendants during the pendency of this action and permanently thereafter, from instituting, or maintain foreclosure proceedings in Plaintiffs' property created under the subject mortgage transactions or from otherwise taking any steps to deprive Plaintiffs of ownership of the properties;

7.    Award Plaintiffs compensatory damages pursuant to *12 U.S.C. §2607(d)*;

8.    Award Plaintiffs statutory damages as provided under *15 U.S.C. §1640(a)* and under *12 U.S.C. §2607(d) (2)*;

9.    Award actual damages against Defendants according to proof at trial pursuant to *15 U.S.C. §1640(a)* and under *12 U.S.C. §2607(d)(2)*;

10.   Award Plaintiffs recovery of attorneys' fees and costs pursuant to *12 U.S.C. §2607(d)* and *15 U.S.C. §1640(a)*;

11.   Award Plaintiffs punitive or exemplary damages;

12.   Award Plaintiffs damages for loss of use of money converted by Defendants, according to proof;

13.   Grant Plaintiffs an order of restitution; and

14.   Such other relief as the Court deems just.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand that this case be tried before a jury pursuant to the Seventh Amendment of the Constitution of the United States of America, *Rule 38(b) of the Federal Rules of Civil Procedure*, and *Local Civil Rule 38.1* of the Local Civil Rules of the United States District Court for the Southern District of California.

Dated: August ___, 2009           LAW OFFICE OF MICHAEL A. ALFRED


By: _____
          Michael A. Alfred
          Attorney for Plaintiffs

**EXHIBIT A**



**Northwest Mutual**
FINANCIAL TRUST

Seventeen Twenty Harrison Street, Penthouse A, Hollywood, FL 33020  Office 954-304-9800  Telecopy 954.241.1445
Office locations: Boca Raton, Hollywood, Los Angeles, Miami, Orlando, Pompton Plaines



Q. Who can banks turn to during unprecedented real estate market conditions like these?

A. Northwest Mutual Financial Trust, a real estate acquisitions organization specializing in creating innovative and customized exit strategies and marketing plans for heavily discounted real estate opportunities.

With Northwest Mutual, you'll be partnering with a team who works hand-in-hand with every individual involved in the process from employees and asset managers to bank officers, lenders and buyers.  Northwest Mutual has become an industry leader by demonstrating expertise, dedication and integrity – resulting in success for everyone involved.

When your financial institution turns to Northwest Mutual, we'll sell out your property inventory through a vast network of asset managers who are enthusiastic about selling properties with aggressive discounts. The end buyers are attracted by and satisfied with the qualifications of each property that automatically include the industry's best prices. The result is success and satisfaction for all involved.



A



# Northwest Mutual
## FINANCIAL TRUST

Seventeen Twenty Harrison Street, Penthouse A, Hollywood, FL 33020  Office 954-304-9800  Telecopy 954.241.1445
Office locations: Boca Raton, Hollywood, Los Angeles, Miami, Orlando, Pompton Plaines

## THE NORTHWEST MUTUAL LEADERSHIP TEAM

Under the direction of Managing Trustee and CEO Corey Chancelor, Northwest Mutual has experienced impressive growth.  Mr. Chancelor learned the real estate business from his father and has a lifetime of hands-on experience and expertise from all sides of the investment process (ownership, construction, financing, buying, selling and tenant management). This expertise is the inspiration for the development of the Trust's ability to negotiate advantageous pricing, create exit strategies and administer marketing programs. Chancelor provides sound and steady leadership that extends beyond the Northwest Mutual team and is welcomed by banks, business partners, developers, asset managers and investors.

The sales velocity of Northwest Mutual is driven by Vice President of Sales Marlon Chancelor.  Marlon also brings a lifetime of field experience to the top level of the organization.  He has personally taken down more than $100 million worth of real estate and works with every asset manager in Northwest Mutual's global power selling network to negotiate bulk purchase agreements, handle and overcome any sales obstacles and empower all sales partners to exceed their sales goals.

## ACQUISITIONS

Northwest Mutual works with financial institutions that are ready to partner with an organization with the capital available for immediate acquisitions. During the property evaluation and selection process, the current sales and rental markets are evaluated along with a local demographic analysis. Using the substantial Florida market as a springboard, Northwest Mutual is currently launching into national and international markets and moving into single family homes, townhomes and condominium properties.

## LIQUIDATIONS

Working with each unique seller and property, a custom program is designed based on current market conditions and guidelines.  Qualified sales are delivered immediately and closings begin within 30 days or less. Northwest Mutual aligns with some of the nation's largest banks to develop each custom exit strategy to assure that all programs are fully legal, allowable and approved by major lenders.  These banks pre-approve the programs and are then able to close transactions in record time.



Madison Oaks, Palm Harbor, FL

## RECENT PROPERTIES

| | | |
|---|---|---|
| Belmont at Ryals Chase<br>Zephyrhills, Florida<br>$25.5M in approximately 90 days | Grand Reserve at Kirkman Parke<br>Orlando, Florida<br>$26.3M in approximately 90 days | The Landing<br>Altamonte Springs, FL<br>$12.2M in the first 90 days |
| The Preserve at Temple Terrace<br>Temple Terrace, Florida<br>$22.6M in approximately 90 days | The Madison at Metrowest<br>Orlando, Florida<br>$14.6M in the first 30 days | Windsor at Sabal Walk<br>Longwood, FL<br>Now selling! |